UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ENNIS LEE BROWN

        Petitioner,

v.                                            Case No. 16-cv-1497-pp

BRIAN FOSTER,

        Respondent.

---

**ORDER DENYING MOTION FOR EVIDENTIARY HEARING (DKT. NO. 84); DENYING MOTION FOR RECONSIDERATION (DKT. NO. 85); DENYING MOTION FOR EMERGENCY RELEASE (DKT. NO. 86); GRANTING MOTION FOR LEAVE TO APPEAL WITHOUT PREPAYMENT OF FILING FEE (DKT. NO. 87) AND DENYING MOTION FOR REVIEW AND EVIDENTIARY HEARING (DKT. NO. 89)**

---

On May 28, 2019, the court issued an order dismissing the petitioner's petition for writ of *habeas corpus* without prejudice because it contained both exhausted and unexhausted claims. Dkt. No. 82. Two weeks later—on June 14, 2019—the petitioner filed a motion for an evidentiary hearing. Dkt. No. 84. Three days later, the court received from the petitioner a motion for reconsideration. Dkt. No. 85. On August 9, 2019, the court received a motion from the petitioner, asking for emergency release. Dkt. No. 86. On October 8, 2019, the court received the petitioner's motion for permission to appeal *in forma pauperis* (that is, without prepaying the filing fee). Dkt. No. 97. Finally, on October 15, 2019, the court received another motion from the petitioner, asking the court to review and grant him an evidentiary hearing on an issue he

1

indicated the court hadn't addressed in its *habeas* ruling. Dkt. No. 89. This order resolves these motions.

**I.      Background**

In November of 2016, the petitioner filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254, challenging his 2013 conviction on multiple counts charging him with offenses related to the sexual and physical abuse of five of his daughters. Dkt. No. 1. In January 2017 the court screened the petition, and issued an order allowing the petitioner to proceed on three claims. Dkt. No. 9. The petitioner later asked to amend his petition, dkt. no. 15, and the court allowed him to do so, dkt. no. 25. In its order allowing the amended petition, the court identified five claims on which the petitioner could proceed: (1) a Fourth Amendment claim that Milwaukee Police arrested the petitioner without a warrant; (2) a Sixth Amendment claim that the petitioner was denied his right to a speedy trial; (3) a Sixth Amendment claim that the petitioner was denied counsel; (4) an Eighth Amendment double jeopardy/multiplicity/duplicity claim; and (5) a sufficiency of the evidence claim. See Dkt. Nos. 25, 77.

Over the next eight months, the petitioner filed over twenty-five documents, including motions for emergency release (dkt. nos. 40, 43, 45, 57), a motion for evidentiary hearing (dkt. no. 31), and various letters, other motions and responsive briefs. See generally Dkt. Nos. 27-58. The court issued a February 27, 2018 order addressing the petitioner's filings; it denied his

motion for an evidentiary hearing as premature and denied his motions for emergency release as unwarranted. Dkt. No. 59.

About a year later, the court issued a twenty-two-page order recounting the posture of the case and considering the petitioner's bases for *habeas* relief. Dkt. No. 77. The court concluded that the petition constituted a "mixed" petition; the petitioner had raised only two of his claims—the denial of his right to speedy trial and denial of right to counsel—in his appeal to the Wisconsin Court of Appeals and had presented only his denial of right to counsel claim to the Wisconsin Supreme Court. Dkt. No. 77 at 15. The court found that the petitioner hadn't given the Wisconsin Court of Appeals a chance to consider the other three claims and had not given the Wisconsin Supreme Court the opportunity to consider those three claims or the speedy trial claim. Id.

The February 19, 2019 order explained that in a case involving a "mixed" petition—a petition that raised exhausted and unexhausted claims—the court had three options under the law: (1) it could dismiss the entire petition without prejudice under Rose v. Lundy, 455 U.S. 509, 510 (1982); (2) it could dismiss the unexhausted claims and allow the petitioner to proceed on only the exhausted claims; or (3) it could hold the petitioner's petition in abeyance ("stay" the proceedings) until he returned to the state court and exhausted his state court remedies under Rhines v. Weber, 544 U.S. 269, 273 (2005). Id. at 15-17. The court explained that if the petitioner wanted to go with the third option—asking the court to stay the case while he returned to state court to exhaust the unexhausted claims—he would need to show good cause for failing

3

to raise the four unexhausted claims in state court before filing his federal *habeas* petition. Id. at 17-18. The court perceived that the plaintiff had appeared to assert that his appellate counsel's ineffective performance constituted his good cause. Id. at 18. It noted, however, that "'[a] claim of ineffectiveness must itself have been fairly presented to the state courts before it can establish cause for a procedural default of another claim.'" Id. (quoting Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004)).

The court explained that the way the petitioner could challenge the effectiveness of his appellate counsel was through a [State v.] Knight, [168 Wis. 2d 509 (Wis. 1992)] petition. Id. The court observed that it had not found a Knight petition attached to any of the petitioner's filings with this court and or in the public record. Id. The court remarked:

> Perhaps the petitioner has filed a Knight petition in state court, and this court somehow missed it. Perhaps he has chosen not to file a Knight petition for some reason; that would be his right. Perhaps he would like the opportunity to file a Knight petition, and wants this court to delay its ruling until he can do that. Before the court dismisses the petition for procedural default, as the respondent has asked it to do, the court will give the petitioner the opportunity to provide the court with proof that he has filed a Knight petition or tell the court that he has chosen not to do so. If the petitioner has filed a Knight petition and the state courts have ruled on it, he should provide this court with copies of the state court's decision. If he has not filed a Knight petition but wants to do so, he should file that petition by the deadline the court sets below. If the petitioner notifies the court that he has chosen not to file a Knight petition, the court will issue its ruling dismissing the petition on the ground of procedural default.

Dkt. No. 77 at 20. The court gave the petitioner until March 29, 2019 to file his response to the court's February 19, 2019 order. Id.

4

On March 4, 2019, the court received the petitioner's response. Dkt. No. 80. He told the court that he had tried to file something with the Wisconsin Supreme Court in August of 2015, but that that court had dismissed his case because he did not show good cause for waiving the $195 filing fee. Id. His response further stated that "I would like to proceed and await your decision on my Writ of Habeas Corpus, 28 U.S.C. §2254" and "[the petitioner] will not [] have plans to return to the State of Wisconsin Court System, at this stage." Id. at 2-3.

Based on this response, the court dismissed the mixed petition on May 28, 2019. Dkt. No. 82. It wrote that

> even though this court has given him a chance to do so, the petitioner has not explained to this court what issues he raised in the petition to the Wisconsin Supreme Court []. Nor has he explained why he did not send in the paperwork to prove that he was indigent, so that the Supreme Court could consider whether to waive the $195 filing fee. The petitioner has demonstrated only that he filed something titled "Petition for Writ of Habeas Corpus" in the Wisconsin Supreme Court on October 21, 2015 and that the court dismissed that petition two months later for failing to pay the filing fee.
>
> The court concludes that the petitioner never has filed a petition under State v. Knight, and thus never has given a state court the opportunity to review his argument that his appellate counsel was ineffective. The petitioner has informed this court that he does not intend to return to the state court, which means he does not intend to give the state court an opportunity to review his ineffective-assistance-of-appellate-counsel argument. Because the petitioner isn't trying to exhaust that unexhausted claim, he cannot show good cause for the court to stay the mixed petition until he exhausts that claim. The petitioner has not asked the court to dismiss his unexhausted claim[s] and proceed on his exhausted claim. He has said only that he "would like to proceed and await [the court's] decision on [his] Writ of Habeas Corpus 28 U.S.C. 2254." Dkt. No. 80 at 1. Because the Seventh Circuit has prohibited district courts from ruling on mixed petitions, the court has only one option:

5

> to dismiss the mixed petition. Several of the petitioner's grounds for relief contain claims that are procedurally defaulted due to his failure to present them to the highest State court, and the court warned the petitioner that if he chose not to file a <u>Knight</u> petition, it would dismiss the petition on the ground of procedural default. <u>See</u> Dkt. No. 77 at 20 ("If the petitioner notifies the court that he has chosen not to file a <u>Knight</u> petition, the court will issue its ruling dismissing the petition on the ground of procedural default.") That is what the court will do.

<u>Id.</u> at 4-5. The court entered judgment the same day. Dkt. No. 83.

## II.    Motion for Reconsideration (Dkt. No. 85)

The petitioner's June 2019 "motion for reconsideration" is five pages long, but the petitioner attached 110 pages of exhibits. Dkt. No. 85. The motion for reconsideration asserts that the court's May 28, 2019 order dismissing the petition failed to address the "numerous claims of structural defects" that the petitioner had asserted in the petition. <u>Id.</u> at 1. The petitioner cites Federal Rule of Civil Procedure 59 and argues that the court had made a "manifest error of law" in dismissing his mixed petition without addressing his claims on their merits. <u>Id.</u> The petitioner contends that the court should have addressed the claims on their merits, because those claims related to the most fundamental rights of a fair trial. <u>Id.</u> at 2. He argues that under <u>Brown v. Brown</u>, 847 F.3d 502, 506 (7th Cir. 2017), he was entitled to an evidentiary hearing on his claims of ineffective assistance of trial and appellate counsel. <u>Id.</u> The petitioner also cites <u>House v. Bell</u>, 547 U.S. 518, 536 (2006) in arguing that the court should excuse his procedural default because allowing his unjust incarceration would amount to a fundamental miscarriage of justice. <u>Id.</u> at 3.

6

A. <u>Standard for Reconsideration</u>

"Although motions to reconsider are not specifically authorized by the Federal Rules of Civil Procedure, courts in the Seventh Circuit apply Rule 59(e) or Rule 60(b) standards to these motions." <u>Washington Frontier League Baseball, LLC v. Zimmerman</u>, No. 14-cv-1862-TWP-DML, 2016 WL 4798988, at *1 (S.D. Ind. Sept. 14, 2016). Rule 59(e) allows a court to alter or amend a judgment if the party files the motion "no later than 28 days after the entry of the judgment." Rule 60(b) allows a court to relieve a party of its obligations under a judgment, order or proceeding for five enumerated reasons as well as for "any other reason that justifies relief;" a Rule 60(b) motion must be filed no more than a year after entry of judgment.

The petitioner's motion is timely under Rule 59(e), because he filed it motion approximately twenty days after this court entered judgment.

"Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." <u>Harrington v. City of Chi.</u>, 433 F.3d 542, 546 (7th Cir. 2006) (citation omitted). The petitioner has not provided the court with any newly discovered evidence. Instead, he argues that the court committed a manifest error of law when it dismissed his mixed petition without addressing his claims on their merits. "[A] 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" <u>Oto v. Metropolitan Life Ins. Co.</u>, 224 F.3d

7

601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

B.  Analysis

The petitioner cites two cases which, he says, warrant reconsideration of the court's judgment; Brown, 847 F.3d at 506 and House, 547 U.S. at 536. Neither case supports reconsideration.

This court's decision to dismiss the petitioner's case without prejudice hinged on the fact that the petitioner did not show good cause for a stay and abeyance under Rhines, 544 U.S. 269 to stay the petition. And the reason the court found that the petitioner could not show good cause to stay the petition was because his "good cause"—his appellate counsel's ineffectiveness—had never been presented to the Wisconsin state courts through a Knight petition. As the court explained in its February 19, 2019 order, "'a claim of ineffectiveness must itself have been fairly presented to the state courts before it can establish cause for a procedural default of another claim.'" Dkt. No. 77 at 18 (quoting Lewis, 390 F.3d at 1026). Brown did not comment on or overrule Lewis. Brown considered whether an Indiana petitioner had exhausted his ineffective assistance of trial counsel claim under *Indiana* law. Brown, 847 F.3d at 513. Brown did not discuss the question of whether an argument that appellate counsel was ineffective could constitute good cause for staying a *habeas* petition where the petitioner never presented the argument to the Wisconsin state courts.

In House, 547 U.S. 518, the Supreme Court explained the "fundamental miscarriage of justice" exception to the exhaustion requirement: "In appropriate cases, the Court has said the principles of comity and finality that inform the concepts of cause and prejudice must yield to the imperative of correcting a fundamentally unjust incarceration." Id. at 536 (internal citations and quotations omitted). The petitioner has argued that the court must consider his unexhausted claims because failing to do so would result in a fundamental miscarriage of justice.

"The miscarriage-of-justice exception to procedural default requires the petitioner to make a convincing showing of actual innocence." Jones v. Calloway, 842 F.3d 454, 461 (7th Cir. 2016) (citing McQuiggin v. Perkins, 569 U.S. 383, 386 (2013)).

> To pass through the actual-innocence gateway to a merits review of a procedurally barred claim, the petitioner must have "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial," and must persuade the district court that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence[.]"

Id. (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

The court did not discuss the fundamental miscarriage of justice exception in its February 19, 2019 order or its May 28, 2019 order. It did not apply because the petitioner never presented any new evidence of his actual innocence, no evidence sufficient to convince the court "more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup, 513 U.S. at 327. Nor does the motion for reconsideration

9

offer any new evidence showing actual innocence. The miscarriage-of-justice exception to the exhaustion requirement doesn't apply.

The petitioner is correct that the court didn't rule on the merits of his petition, and it understands that he is frustrated by that fact. He wanted to be heard on his claims, and the court understands that. That is why it tried to give him an opportunity either to return to state court and exhaust the unexhausted claims or to proceed just on the claims that were exhausted. He didn't choose either, and that put the court in the position of being unable to consider the merits of his claims under Seventh Circuit law.

The court denies the motion to reconsider.

### III. Motion for Evidentiary Hearing (Dkt. No. 84)

The petitioner has asked the court to conduct a "mandatory" evidentiary hearing on the claims in his petition. Dkt. No. 84. But the court has dismissed the petition and is denying his motion for reconsideration. Even if the petitioner had exhausted his remedies, the court is not required to hold an evidentiary hearing in a *habeas* proceeding; Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts leaves to the district court's discretion the question of whether to hold an evidentiary hearing. The court makes that decision after reviewing all the materials filed in the case.

Here, the court can't consider the merits of the petitioner's claims, so there is no need for an evidentiary hearing. The court will deny this motion.

**IV.     Motion for Emergency Release (Dkt. No. 86)**

Again, the petitioner's request for emergency release is based on his argument that he is entitled to relief on the merits of his *habeas* petition. Because the court has dismissed the petition, the court must deny this motion.

**V.      Motion in Support of Review and Evidentiary Hearing (Dkt. No. 89)**

The petitioner says that he wants the court to address a claim it didn't address in its dismissal order—the argument that his trial and appellate counsel provided him with ineffective assistance of counsel. Dkt. No. 89. The court understands that the petitioner wants the court to consider this claim, and that he feels strongly that he received deficient representation from both his trial and appellate counsel. But the court has explained that the court can't rule on the ineffective assistance of appellate counsel claim—the basis the petitioner gave for his failure to exhaust remedies—because he did not present that claim to the state courts. The court will dismiss this motion.

**VI.     Motion for Leave to Appeal Without Prepaying of the Filing Fee (Dkt. No. 87)**

On October 8, 2019, the court received the petitioner's motion for leave to appeal without prepayment of the appellate court filing fee. Dkt. No. 87. There was no notice of appeal on the docket, but the petitioner typed at the top of the application that he was seeking a writ of mandamus so that he could pursue an appeal or have the court grant his *habeas* petition. Id. at 1. Less than a week later, the court received a notice informing the court that the petitioner had filed a *mandamus* action in the Seventh Circuit Court of Appeals. Dkt. No. 88.

The application indicates that the only source of income the petitioner has is his job at the prison, which pays him about $56 a month. Id. at 2. He owns no property and has no savings. Id. at 3-5. The court concludes that the petitioner does not have the funds to pay the appellate filing fee. The court will grant this motion.

**VII. Conclusion**

The court **DENIES** the petitioner's motion for evidentiary hearing. Dkt. No. 84.

The court **DENIES** the petitioner's motion for reconsideration. Dkt. No. 85.

The court **DENIES** the petitioner's motion for emergency release. Dkt. No. 86.

The court **GRANTS** the petitioner's motion to proceed without prepaying the appellate filing fee. Dkt. No. 87.

The court **DENIES** the petitioner's motion for review and evidentiary hearing. Dkt. No. 89.

Dated in Milwaukee, Wisconsin this 1st day of November, 2019.

           **BY THE COURT:**

           _____
           **HON. PAMELA PEPPER**
           **Chief United States District Judge**